**Morris STEVENS, Individually and as representative of a class under Rule 23 F.R.C.P., Plaintiff,**

**v.**

**WOODSTOCK, INC., a corporation, et al., Defendants.**

**No. 73 C 1456.**

United States District Court,
N. D. Illinois, E. D.

Jan. 21, 1974.

Solomon Gutstein, Ronald H. Balson, Chicago, Ill., for plaintiff.

Getzoff, Rothbart & Getzoff, Chicago, Ill., for defendant Woodstock, Inc.

Ira Marcus, Ltd., Chicago, Ill., for defendant Steinkohn & Co.

## MEMORANDUM OF DECISION

TONE, District Judge.

This action arises out of alleged commodities futures trading by the corporate defendants with funds deposited by plaintiff and other members of the purported class of some 90 individuals on whose behalf he seeks to bring this action. The allegations of the complaint are in substance as follows:

The corporate defendants were engaged in the business of trading in commodities futures as registered commission merchants or as floor brokers acting under the authority of the Commodity Exchange Act (7 U.S.C. § 1ff). Defendant Ness was not a registered broker or customer's man under that Act.

Plaintiff and those he seeks to represent were induced to deposit large sums of money with one or more of the corporate defendants by defendant Ness' representations "that profits would result from Defendants' efforts." All alleged class members, who were "unsophisticated investors," deposited funds "under the same or similar factual conditions." The corporate defendants established trading accounts for each of the customers and then wrongfully commingled the deposits.

The corporate defendants conspired with defendant Ness "to make unauthorized transactions in the commodity futures markets from such commingled funds, such that at any given time it is impossible to determine which plaintiff's * money was being used to consummate a transaction." Defendants (presumably the corporate defendants), acting on directions from defendant Ness, and without the knowledge or au-

* All members of the purported class are described as plaintiffs in the complaint.

thorization of plaintiff and the other customers, traded in commodity futures with funds that included the commingled funds; and at the close of each trading day they arbitrarily allocated transactions among customers' accounts. In addition, they engaged in frequent and excessive trading amounting to churning of the accounts Defendants' acts were carried out by use of the mail and telephone, and the commodities futures contracts were in interstate commerce. Defendants' conduct resulted in the loss to plaintiff of the entire amount he deposited, which was in excess of $150,000, and resulted in losses by other members of the purported class in amounts not alleged.

Plaintiff invokes the Commodity Exchange Act, 7 U.S.C. §§ 4 and 6(b); the Securities Act of 1933, 15 U.S.C. § 77q(a); and the Securities Exchange Act of 1934, 15 U.S.C. § 78o(c)(1) and 78j(b), and Securities and Exchange Commission Rule 10(b)(5), 17 C.F.R. § 240.10b–5. Defendants have moved to dismiss the class allegations and the allegations of federal securities law violations.

Class actions are maintainable under Rule 23(b)(3), F.R.Civ.P., upon which plaintiff relies, only when the prerequisites of subdivision (a) of the rule are satisfied, and, in addition, when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The complaint raises certain questions of law and fact applicable to all members of the prospective class. It is apparent, however, from plaintiff's allegations, vague as they are, that there are numerous important issues of fact that relate only to individual members. He does not allege a representation or series of representations common to all customers. It appears from the complaint that at least some, if not all, customers had trading accounts with one and not other corporate defendants. Although it is alleged that all customers made deposits "under the same or similar factual conditions," it is apparent that the nature of the agreement between each customer and the corporate defendant with which he had an account would have to be the subject of separate evidence. The same is true of the representations by defendant Ness to each customer and that customer's reliance on the misrepresentations. The trading transactions made on behalf of, or allocated to, one customer would be different from those made on behalf of, or allocated to, some, if not all, other customers.

■ Actions asserting fraud, securities laws violations, or other similar wrongs are not likely to be suitable for class treatment if they are founded on oral misrepresentations which are not common to all members of the purported class. The Advisory Committee on the Federal Rules of Civil Procedure observed in the 1966 Committee Note that "a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." (3B Moore's Federal Practice 23–29 (2d ed. 1969).) See also 6 Loss, Securities Regulation 3947–3950 (2d ed. 1969 Supp.): "The propriety of a class action when misstatements are oral is generally considered to be doubtful;" and see Bromberg, Securities Laws, ¶ 11.6 at 258 n. 33.1 (1969).

In Moscarelli v. Stamm, 288 F.Supp. 453, 462 (E.D.N.Y.1968) allegations of fraudulent representations inducing trades and of churning and violation of margin requirements by the defendant securities brokers were held unsuited for class treatment. The Court said:

> "The misrepresentations and agreements might have been similar with respect to all members of the class, but they were not standardized in the same sense as standardized misrepresentations appearing in a prospectus,

financial statements and advertisements and standardized agreements appearing in written documents. See, Fischer v. Kletz, 41 F.R.D. 377, 382 (S.D.N.Y.1966). Although having some common similarities, these face to face oral misrepresentations are individualized and susceptible of material variations . . . ."

See also Morris v. Burchard, 51 F.R.D. 530, 535 (S.D.N.Y.1971); Lah v. Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970). With respect to the allegations of churning, which are also made in the case at bar, the Court in *Moscarelli* said:

"A reading of the churning cases illustrates the personal character of most of the contacts involved in this tort." (288 F.Supp at 462.)

With respect to the alleged margin violations, the Court pointed out that there would be individual issues with respect to the participation of the customer, which would depend upon his sophistication and the nature of his arrangements with the broker.

■ In the case at bar there are "individualized" issues as to misrepresentation, reliance, and agreement, all "susceptible of material variations." In addition, the wrongs alleged to have occurred after the trading agreements were entered into, i. e., commingling, unauthorized trading, allocations of profits and loss, and churning of accounts, are also to a large extent "individualized" and "susceptible of material variations," and, like the alleged margin violations in *Moscarelli*, may be actionable or not depending upon the customer's participation. The predominance of individual issues renders the case unsuited for class treatment.

Defendants also challenge those paragraphs of the complaint which invoke the federal securities laws. In order for either the Securities Act of 1933 or the Securities Exchange Act of 1934 to apply, a "security" must be involved. Plaintiff contends that the agreement setting up his commodities futures account was an "investment contract" and thus a "security" as defined in Section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1), and Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10). The definitions of "security" in both statutes are virtually identical. Tcherepnin v. Knight, 389 U.S. 332, 335–336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

■ Referring to the term "investment contract" as it appears in the definition of "security" in the 1933 Act, the Supreme Court said in S. E. C. v. W. J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946): "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." This test was reiterated in Tcherepnin v. Knight, 389 U.S. 332, 338–339, 88 S.Ct. 548, 19 L. Ed.2d 564 (1967). Because the requirement of a "common enterprise" is lacking, a discretionary trading account in commodities futures is not a "security" as defined in the 1933 Act. Milnarik v. M–S Commodities, Inc., 457 F.2d 274 (7th Cir. 1972), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). See also, Stuckey v. duPont Glore Forgan, Inc., 59 F.R.D. 129, 131 (N.D.Cal.1973); Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066 (M. D.Pa.1972). Plaintiff argues that there was a common enterprise in the case at bar because of the alleged commingling and unauthorized trading with commingled funds. Cf. Milnarik v. M–S Commodities, Inc., *supra,* at 279 n. 6. Even assuming that the Court of Appeals would have reached a different result in *Milnarik* if the funds of customers had been commingled, which is at least doubtful, plaintiff's argument is defeated by his allegations that he and the other customers did not authorize any pooling. Without a common purpose there could be no common enterprise.

Pursuant to defendants' motion, the class action allegations and the allegations referring to the Securities Act of 1933 and the Securities Exchange Act of 1934 and Rule 10b–5 are stricken from the complaint.