**E. F. HUTTON & COMPANY, INC., a Delaware Corporation, Individually and as assignee of Roy McKnight, Plaintiff,**

**v.**

**Gordon LEWIS, Defendant.**

**Civ. A. No. 75–72288.**

United States District Court, E. D. Michigan, S. D.

Feb. 18, 1976.

Gerald C. Davis, Cummings, McClorey, Davis & Acho, P. C., Livonia, Mich., for plaintiff.

Benjamin Rosenthal, Southfield, Mich., for defendant.

## OPINION

CORNELIA G. KENNEDY, District Judge.

The facts as alleged in the complaint are essentially as follows: One Roy McKnight had a commodities futures trading account with Plaintiff E. F. Hutton; Defendant Lewis was the account executive in charge of this account; on May 22, 1975, defendant sold short, for July 1975 delivery, a number of pork belly futures without authorization from McKnight. When McKnight learned of the transaction, he disaffirmed it; Lewis then covered with a long purchase of pork belly futures on July 15, 1975. However, he did so at a higher price, and as a result there was a net loss to the McKnight account of $43,131.37. Apparently E. F. Hutton compensated McKnight and took an assignment of his claim and/or was subrogated to it. The present suit is an action by E. F. Hutton to recover the amount of the loss to the McKnight account from Lewis.

Defendant states two bases for his motion to dismiss. First, he claims that plaintiff has inadequately pleaded jurisdiction. The jurisdictional allegations are contained in paragraph 1 of the complaint:

That this Honorable Court has jurisdiction of this cause of action pursuant to the Securities and Exchange Act, being 15 U.S.C. § 77Q(a), 15 U.S.C. § 77V(a) [these sections are actually part of the Securities Act of 1933, not of the Securities Exchange Act of 1934], 15 U.S.C. § 78J(b), 15 U.S.C. § 78aa, and the Commodities [Commodity] Exchange Act, being Title 7, § 1 et seq.

Defendant argues that the securities laws do not provide jurisdiction among other reasons because commodity futures are not securities within the meaning of either 15 U.S.C. § 77b(1) [Securities Act] or 15 U.S.C. § 78c(a)(10) [Securities Exchange Act]. The courts treat the two sections as giving essentially the same meaning to the term "Security." See *Tcherepnin v. Knight*, 389 U.S. 332, 335–36, 88 S.Ct. 548, 552, 19 L.Ed.2d 564, 568 (1968); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974).

The definition of "Security" in the Securities Exchange Act is as follows:

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agree-

ment or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

Several cases have directly considered whether commodities futures are "securities" as that term is used in the federal securities laws. The conclusion has been that they are not. See *Stevens v. Woodstock, Inc.*, 372 F.Supp. 654 (N.D.Ill. 1974); *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359 (S.D.N.Y.1966). Although there are several other decisions which have found transactions involving commodities futures to come within the federal securities laws, see, e. g., *Maheu v. Reynolds & Co.*, 282 F.Supp. 423 (S.D.N. Y.1968); *Berman v. Orimex Trading, Inc.*, 291 F.Supp. 701 (S.D.N.Y.1968), these cases were suits in which fraud was alleged in the inducement of plaintiffs to open commodity future trading accounts that would be managed by defendants. These decisions concluded that this arrangement constituted an "investment contract" within the definitional sections of the federal securities laws. The leading case defining "investment contracts" is *S. E. C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The Court said:

[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. . . . It embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits. 328 U.S. at 298–99, 66 S.Ct. at 1103, 90 L.Ed. at 1249.

Thus, even where, in form, the investor was buying something like a warehouse receipt for a commodity, where the return he hoped to realize depended on the efforts of the promoters, an investment can be found to be the purchase of a security. See, e. g., *Glen Arden Commodities, Inc. v. Constantino*, 493 F.2d 1027 (2d Cir. 1974).

However, most such decisions expressly distinguish the transactions involved in those cases from trades in specific commodities futures. See, e. g., *Glen Arden Commodities, Inc. v. Constantino*, 493 F.2d 1027, 1034 (2d Cir. 1974); *Berman v. Orimex Trading, Inc.*, 291 F.Supp. 701, 702 (S.D.N.Y.1968). This complaint does not allege any fraud inducing McKnight to open this trading account, which might have been a transaction within the securities laws. Rather, the facts alleged in the complaint show pure trade in commodity futures, bringing the case squarely within the rule stated in *Stevens v. Woodstock, Inc.*, 372 F.Supp. 654 (N.D.Ill.1974), and *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359 (S.D.N.Y. 1966).

The other basis for jurisdiction stated in the complaint is the Commodity Exchange Act, 7 U.S.C. §§ 1–22. This statute certainly covers transactions in pork bellies, which are within the definition of "commodities," but, as defendant notes, there is no section of the Act which gives the Court jurisdiction over private actions.

While the complaint thus does not plead jurisdiction properly, it appears from the allegations of the complaint that the Court in fact has jurisdiction under several statutes.

First, while the Commodity Exchange Act does not directly confer jurisdiction, the courts have implied a private right of action for violations of that statute. See, e. g., *Booth v. Peavey Company Commodity Services,* 430 F.2d 132 (8th Cir. 1970); *Goodman v. H. Hentz & Co.,* 265 F.Supp. 440 (N.D.Ill.1967); *Gould v. Barnes Brokerage Co.,* 345 F.Supp. 294 (N.D.Tex.1972). Because of this the Court would have jurisdiction under 28 U.S.C. § 1337 which provides:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

The Commodity Exchange Act is clearly an Act of Congress regulating commerce. *Gould v. Barnes Brokerage Co.,* 345 F.Supp. 294 (N.D.Tex.1972). In addition, there would be general federal question jurisdiction under 28 U.S.C. § 1331 since more than $10,000 is in controversy.

Even if there was no violation of federal securities statutes, the complaint states facts which would constitute a number of perfectly good state law claims, perhaps including fraud, breach of contract, breach of fiduciary duty, and conversion. The Court would have jurisdiction over these claims under 28 U.S.C. § 1332, by virtue of the diversity of citizenship of the parties (HUTTON and LEWIS).

Accordingly, the Court will permit plaintiff to file an amended complaint properly alleging the basis of the Court's jurisdiction. However, in the event that an amended complaint is not filed on or before March 12, 1976, the defendant may present an order granting the motion to dismiss. If an amended complaint is filed, it should, in accord with the spirit of Federal Rule of Civil Procedure 10(b), state the various theories of recovery in separate counts.

As a second basis for the motion to dismiss, defendant claims that the complaint does not adequately allege fraud, citing Federal Rule of Civil Procedure 9(b), which requires that the circumstances be pleaded specifically. The case cited by defendant expresses the purpose of the rule:

> Rule 9(b)'s specificity requirement stems not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing: "It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically."

*Segal v. Gordon & Coburn Corp.,* 467 F.2d 602, 607 (2d Cir. 1972).

While defendant is correct that paragraphs 11–17, which refer to fraud, are general, the earlier paragraphs set out with considerable detail the circumstances constituting the alleged fraud, see ¶¶ 6–10, achieving the purposes of notifying the defendant of the claim and putting plaintiff on record regarding what he claims defendant has done. Whether the circumstances alleged state a fraud claim is not presently ripe for decision, but if they do fail to state a claim, it is not for lack of specificity.

Defendant alternatively requests that certain allegations of the complaint be stricken. It would be possible to postpone a decision on this question until an amended complaint is filed; however, in view of the rulings that the Court intends to make on the requests to strike, the Court is of the opinion that a ruling at this time will avoid the necessity of another motion in the event that an amended complaint is filed.

First, defendant argues that the allegations regarding the securities laws

should be struck on the ground that the transactions involved did not involve a "security." As discussed above, this position has merit because the transactions involved would not come within 15 U.S.C. §§ 77b(1) or 78c(a)(10).

■ Second, defendant argues that the references to certain provisions of the Commodity Exchange Act should be stricken. The first challenge is to paragraph 13 of the complaint:

13. That pursuant to Title 7 § 6(a), your Defendant had a duty to avoid excessive speculation and by the acts heretofore complained of has constituted an undue burden on interstate commerce and your Plaintiff in particular.

Defendant argues that § 6a(4) provides an exemption from this provision that is applicable to this transaction. Subsection (4) states, in part:

This section shall apply to a person that is registered as a futures commission merchant or as floor broker under authority of this chapter only to the extent that transactions made by such person are made on behalf of or for the account or benefit of such person.

. . .

There is nothing in the pleadings to indicate whether defendant is registered as a futures commission merchant or floor broker. Even if he was, the complaint claims that the transactions, while in the account of Roy McKnight, were not for the benefit of McKnight. ¶ 6. This is a sufficient allegation that these trades were for the use of "such person" [LEWIS], thus making the exemption unavailable to him.

There is more serious problem with paragraph 13, however. Section 6a(1) states, in part:

Excessive speculation in any commodity . . . is an undue and unnecessary burden on interstate commerce . . . . . For the purpose of diminishing . . . such burden, the [Commodity Futures Trading] commission shall, from time to time, after due notice and opportunity for hearing, by order, proclaim and fix such limits on the amounts of trading which may be done or positions which may be held by any person under contracts of sale of such commodity for future delivery

. . . .

The complaint does not allege that these trades exceeded any limits fixed by the commission. In fact, no such limits were in effect in May or July of 1975 when these trades took place.[1]

Defendant also seeks to have the Court strike several references to sections of the Commodity Exchange Act contained in paragraphs 14 and 15 of the complaint.

14. That in further breach of his fiduciary responsibilities, your Defendant GORDON LEWIS did cheat and defraud your Plaintiff by executing the aforesaid unauthorized discretionary trade and did further willfully make false report and statement and did further willfully deceive and attempt to deceive your Plaintiff and did further attempt to offset against the orders of another without the consent of his principal, the transaction herein complained of, all contrary to Title 7 § 6(c)[a–d] [sic].

15. That your Defendant GORDON LEWIS did unlawfully engage in a "wash" sale accommodation trade and ficticious [sic] sale with the intent to create a privilege indemnity or ad-

---

1. The trading limit regulations of the Commodities Futures Trading Commission (CFTC), and its predecessor body, the Commodities Exchange Authority (CEA), are found in 17 C.F.R. Part 150.

Prior to the creation of the CFTC, the CEA proposed to add regulations regarding pork belly futures trading. See proposed 17 C.F.R. § 150.14, 40 Fed.Reg. 4018 (Jan. 27, 1975). A hearing was scheduled on this proposed rule for April 10, 1975, 40 Fed.Reg. 14091 (Mar. 28, 1975), but the hearing was cancelled by the CEA, which said that if a new hearing date for the proposed regulation was to be set, it would be announced by the new CFTC. 40 Fed.Reg. 15907 (April 8, 1975). No further notices regarding the proposed pork belly regulations or hearings thereon have been published in the Federal Register.

vance or decline guarantee, all contrary to Title 7 § 6(c)[a & B] [sic].

As to paragraph 14, defendant requests the striking of any reference to subsection 6b(D), and as to paragraph 15, defendant urges the Court to strike any reference to the section cited therein. Essentially, defendant claims that the transactions involved are not the sort covered in those sections. The statutory provisions are rather complicated and incorporate trade terms that lack obvious meanings; however, it would appear that defendant is correct.

The sections cited in the complaint provide, in part:

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) to cheat or defraud or attempt to cheat or defraud such other persons;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(D) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person.

7 U.S.C. § 6b.

(a) It shall be unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity, which is or may be used for (1) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (2) determining the price basis of any such transaction in interstate commerce in such commodity, or (3) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) if such transaction is, is of the character of, or is commonly known to the trade as, a "wash sale," "cross trade," or "accommodation trade," or is a fictitious sale;

(B) if such transaction involves any commodity specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, and if such transaction is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", "decline guaranty".

7 U.S.C. § 6c.

The language of section 6b(D) clearly refers to filling customers' orders by offset, something which did not occur in the

transaction alleged. The term "bucketing" is a trade term. The Senate Report on the 1974 amendments provided a glossary of such terms, which, while expressly stated not to be regarded as a definition for the purposes of the Act, is helpful in interpreting this section. The report stated:

> "Bucketing"—Directly or indirectly taking the opposite side of a customer's order into the handling broker's own account or into an account in which he has an interest, without bona fide speculation on an Exchange.

Senate Report 93–1131, Aug. 29, 1974, 1974 U.S.Code Cong. & Admin.News 5843, 5891. This also indicates that section 6b(D) is meant to prohibit the offsetting of customers' orders.

The language of section 6c(a)(B) was also discussed in the Senate Report. The report supports defendant's contention that the kinds of transactions sought to be regulated are very different from that alleged in this case. The report specifically indicates that the list of terms contained in subsection (b) was aimed at transactions creating options. See Senate Report, supra, at 5880. The report's glossary also defines "wash trading" as

> Entering into, or purporting to enter into, transactions for the purpose of giving the appearance that purchases and sales are being or have been made without actually taking a position in the market.

Senate Report, supra, at 5894.

■ In short, the allegedly improper transaction alleged in this complaint is an ordinary short sale and long purchase of pork belly futures and not the kind of manipulative device that Congress sought to prevent in the sections 6b(D) and 6c(a). Accordingly, unless the amended complaint alleges a transaction within those sections, it should not claim that defendant has violated those provisions of the Act.