CHRISTENSEN HATCH FARMS, INC., Alvin G. Ayers and Donald M. Schmitt, Plaintiffs,

v.

PEAVEY COMPANY, Cayman Associates, Inc., Cayman Associates-Murlas Brothers Commodities, Inc. and Ralph Goelz, Defendants.

No. Civil 3–80–287.

United States District Court, D. Minnesota, Third Division.

Jan. 13, 1981.

Maclay R. Hyde, Minneapolis, Minn., for plaintiffs.

Robert L. Schnell, Jr., Minneapolis, Minn., for Peavey Co.

Eric W. Ingvaldson, Minneapolis, Minn., Joseph Novak, Chicago, Ill., for Ralph Goelz.

Gerald Kennedy, Minneapolis, Minn., or Cayman Associates, Inc.

## MEMORANDUM AND ORDER

RENNER, District Judge.

This matter comes before the Court on motions to dismiss by defendants Peavey Company, Cayman Associates, Inc., and Ralph Goelz. Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), defendants claim the court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Defendant Cayman Associates, Inc. also moves for a change of venue pursuant to 28 U.S.C. § 1404(a) (1976). Robert L. Schnell, Jr., Esq., appeared for defendant Peavey Co.,

Eric Ingvaldson, Esq., and Joseph Novak, Esq., appeared for defendant Ralph Goelz. Gerald Kennedy, Esq., appeared for defendant Cayman Associates, Inc., Maclay R. Hyde, Esq., appeared for plaintiffs.

## I.

Plaintiffs allege in their complaint thirty separate causes of action against some or all of the four named defendants. They premise jurisdiction of this action on 28 U.S.C. §§ 1331, 1337, alleging violations as follows: sections 4b(A) and 4b(C) of the Commodities Exchange Act, 7 U.S.C. §§ 6b(A) and 6b(C), as amended by the Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463, 88 Stat. 1389 (1974), and the Futures Trading Act of 1978, Pub.L.No.95–405, 92 Stat. 865 (1978) [hereinafter referred to as CEA]; section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78hh [hereinafter referred to as the 1934 Act]; and Rule 10b–5 promulgated under the 1934 Act. Plaintiffs also contend this Court has pendant jurisdiction over those causes of actions based upon state statutory and common law.

## II.

Defendants assert as a ground for dismissal of the federal securities law claims that a commodity futures contract is not a security within the definition of the 1934 Act. Accordingly, defendants contend plaintiffs may not rely on the federal securities laws for relief or as a basis for jurisdiction since those laws are limited in their coverage to cases involving the purchase or sale of a "security". 15 U.S.C. § 78c(10).

 Whether a particular financial arrangement is considered a security or, more precisely in this case, an investment contract, within the meaning of section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), is usually determined by applying the standards set forth in *Securities & Exchange Commission v. Howey*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–1103, 90 L.Ed. 1244 (1946). In *Howey*, the Supreme Court defined an investment contract as

a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or third party . . . .

*Id.* at 298–99, 66 S.Ct. at 1102–1103. The *Howey* test may be distilled into three basic elements: (1) An investment of money, (2) in a common enterprise, with (3) profits to come solely from the efforts of others. The definition is intended to be flexible and adaptable to the countless schemes "devised by those who seek the use of money by others on the promise of profits." *Id.* at 299, 66 S.Ct. at 1103. *See also United Housing Foundation v. Forman*, 421 U.S. 837, 847–54, 95 S.Ct. 2051, 2057–2058, 44 L.Ed.2d 621 (1975). The first and last elements are uncontroverted and the issue turns on whether the common enterprise element is satisfied.

 Although individual commodity futures contracts are generally not considered to be securities, some courts have determined that an investment contract is formed when commodity futures accounts are managed by the seller or affiliate. *See, e. g., Securities & Exchange Commission v. Continental Commodities Corp.*, 497 F.2d 516, 520 n.9 (5th Cir. 1974); *Glen-Arden Commodities, Inc. v. Constantino*, 493 F.2d 1027, 1033–35 (2d Cir. 1974); *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 365–67 (S.D.N.Y.1966). An individual commodity futures contract, being no more or less than an option, clearly lacks the common enterprise element of the *Howey* test. *Moody v. Bache & Co.*, 570 F.2d 523, 525 (5th Cir. 1978). The determination of whether managed commodity accounts are investment contracts is more difficult and generally focuses on whether a horizontal or a vertical relationship between investors satisfies the common enterprise test.

Defendants submit that in the commodity futures contract area the common enterprise test must be met by proving the plaintiff is a member of a commodity pool or other horizontal arrangement of investors. This concept was set forth in *Milnarik v.*

*M–S Commodities, Inc.,* 457 F.2d 274 (7th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). In that case the Seventh Circuit held that a discretionary trading account in commodity futures is not a security because such accounts lack a common enterprise: although various customers may be represented by a common agent, the customers are not "joint participants in the same investment enterprise." *Id.* at 276. The *Milnarik* horizontal commonality approach has been reaffirmed by the Seventh Circuit and adopted by other courts. *Curran v. Merrill Lynch, Pierce, Fenner & Smith,* 622 F.2d 216, 221–24 (6th Cir. 1980) *petition for cert. filed,* 49 U.S. L.W. 3053 (U.S. Aug. 9, 1980) (No. 80–203); *Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96, 99–102 (7th Cir. 1977); *Berman v. Bache, Halsey, Stuart, Shields, Inc.,* 467 F.Supp. 311, 315–20 (S.D.Ohio 1979); *Arnold v. Bache & Co.,* 377 F.Supp. 61, 63–65 (M.D.Pa.1973); *Stevens v. Woodstock, Inc.,* 372 F.Supp. 654, 659 (N.D.Ill.1974); *Wasnowic v. Chicago Board of Trade,* 352 F.Supp. 1066, 1069–70 (M.D.Pa.1972), *aff'd without opinion,* 491 F.2d 752 (3rd Cir.), *cert. denied,* 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974); *Stuckey v. duPont Glore Forgan, Inc.,* 59 F.R.D. 129, 131 (N.D. Cal.1973).

Agreement on the horizontal commonality approach is not, however, unanimous. A vertical commonality approach, advanced in the leading case of *Securities & Exchange Commission v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974), has also attracted support. In *Continental Commodities* the Fifth Circuit rejected the *Milnarik* approach in holding that a pro rata sharing of profits is not critical to a finding of commonality. *Id.* at 520–23. Seeking a more expansive standard that would comport with the remedial purposes of the federal securities laws, the court applied the test the Ninth Circuit[1] had used in determining whether various pyramid-type investment schemes were securities: " '[a]

common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.' " *Id.* at 522 (quoting *Securities & Exchange Commission v. Glen W. Turner Enterprises,* 474 F.2d 476, 482 n.7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973)). Criticizing the elevation of the pooling requirement to exalted status, the Fifth Circuit stated that

> the critical inquiry is confined to whether the fortuity of the investments collectively is essentially dependent upon promoter expertise.... That it may bear more productive fruits in the case of some options than it does in others should not vitiate the essential fact that the success of the trading enterprise as a whole and customer investments individually is contingent upon the sagacious investment counselling of [the commodities broker].

*Id.* at 522. This view has found support elsewhere as well. *See Commercial Iron & Metal Co. v. Bache & Co.,* 478 F.2d 39, 42–43 (10th Cir. 1973), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *Alvord v. Shearson Hayden Stone, Inc.,* 485 F.Supp. 848, 852–53 (D.Conn.1980); *Troyer v. Karcagi,* 476 F.Supp. 1142, 1147 (S.D.N.Y.1979); *Rochkind v. Reynolds Securities Inc.,* 388 F.Supp. 254, 255–57 (D.Md.1975); *Marshall v. Lamson Brothers & Co.,* 368 F.Supp. 486, 488–89 (S.D.Iowa 1974) (emphasis on "pooling" of funds in *Milnarik* found to be a too strict or literal limitation on definition of "investment contract"); *Johnson v. Arthur Espey, Shearson, Hammill & Co.,* 341 F.Supp. 764, 765–66 (S.D.N.Y.1972); *Berman v. Orimex Trading, Inc.,* 291 F.Supp. 701, 702 (S.D.N.Y.1968); *Anderson v. Francis I. duPont & Co.,* 291 F.Supp. 705, 708–09 (D.Minn.1968); *Maheu v. Reynolds & Co.,* 282 F.Supp. 423, 426 (S.D.N.Y.1968).

Defendants argue that the horizontal commonality approach should be followed since it more closely comports with the

---

1. The Ninth Circuit, however, has held that a discretionary commodity account creates no common enterprise in the absence of pooling or other horizontal relationship among a broker's customers and, hence, is not a security. *Brodt v. Bache & Co.,* 595 F.2d 459, 461 (9th Cir. 1979).

*Howey* common enterprise requirement. Furthermore, defendants assert plaintiffs have failed to satisfy this test since they have not alleged a sufficient horizontal commonality.

The Eighth Circuit addressed this issue in 1970, before either *Milnarik* or *Continental Commodities* was decided. In *Booth v. Peavey Co. Commodities Services*, 430 F.2d 132 (8th Cir. 1970), it was held *sua sponte* "that a private remedy for churning a commodity account is permitted by ... the applicable portions of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*" 430 F.2d at 133. By implication, the court found that the commodity futures account constituted a security for purposes of the 1934 Act.

Defendant Peavey Company contends the relevant language in *Booth* is dictum as the court was addressing an issue not raised by the parties. Moreover, Peavey contends the remarks were an aside, predating the thorough consideration given to this issue recently by other circuits, and do not reflect this circuit's careful resolution of the issue.

Although the parties in *Booth* may not have raised the issue, the Eighth Circuit's pronouncement must be viewed as more than mere dictum in as much as it considered it necessary to determine in the first instance whether the plaintiff investor had a right to institute an action against a dealer for churning a commodity account. The court was obviously concerned whether the complaint stated a cause of action over which there was subject matter jurisdiction. The Federal Rules of Civil Procedure allow this type of *sua sponte* inquiry. Fed.R. Civ.P. 12(h)(3); *see City of Kenosha v. Bruno*, 412 U.S. 507, 511–14, 93 S.Ct. 2222, 2225–2227, 37 L.Ed.2d 109 (1973). *See also Robert M. v. Benton*, 622 F.2d 370, 372 (8th Cir. 1980). Hence, the statement in *Booth* must be viewed as essential to the outcome of that case and part of its holding and precedential effect.

■ This court is governed by existing Eighth Circuit cases until, if ever, such are overruled. *Duffy v. Currier*, 291 F.Supp.

810, 813 (D.Minn.1968); *Donnell v. Swenson*, 258 F.Supp. 317, 318 (D.Mo.1966), *aff'd on other grounds*, 382 F.2d 248 (8th Cir. 1967); *see Timmreck v. United States*, 577 F.2d 372, 374 n.6 (6th Cir. 1978), *rev'd on other grounds* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634, *on remand*, 600 F.2d 1228 (1979). This is true even if there is persuasive authority in other circuits. Moreover, all doubts on jurisdictional questions must be resolved in favor of a plenary trial rather than dismissal at the pre-trial stage. *See Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414, 417 (8th Cir. 1974). Accordingly, this Court holds that the allegedly discretionary commodity futures accounts at issue here are investment contracts, hence securities within the purview of the 1934 Act. *But see Hofmayer v. Dean Witter & Co.*, 459 F.Supp. 733, 735–37 (N.D.Calif.1978) (CEA preempts field of commodity trading regulation and bars any claim under federal or state securities statutes.).

### III.

Defendants also move to dismiss those causes of action based on alleged violations of the CEA. The CEA does not explicitly grant to a private party the right to seek monetary damages in federal court. Plaintiffs must rely on a private cause of action being implied under the CEA as the basis for obtaining jurisdiction. Defendants assert that no such private cause of action can be or should be implied under the CEA in the light of recent Supreme Court decisions such as *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and the more recent *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

■ In *Cort* the Supreme Court delineated four relevant factors to determine whether a private right of action may be implied under a federal statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff?" Second, is there any indication of

legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088. These factors, however, are not to be given equal weight. The central inquiry is whether Congress intended to create, either expressly or by implication, a private cause of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). The first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose—are generally relied on to determine legislative intent. *Id.* The dispositive question remains whether Congress intended to create such a remedy. *Transamerica*, 444 U.S. at 15–16, 100 S.Ct. at 245; *Redington*, 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Thus, inquiry begins with the language of the statute.

The Commodity Exchange Act of 1936, predecessor to the CEA, was passed as an amendment to the existing Grain Futures Act of 1922. It established a scheme for regulating trading in agricultural commodity futures based primarily on the concept of self-regulation. *Curran*, 622 F.2d at 231. Under the then existing law and prior to the 1974 amendments to the CEA, an implied right of action was generally thought to exist. *See, e. g., Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529, 534–35 (7th Cir.), *rev'd on other grounds sub nom., Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973); *Booth v. Peavey Co. Commodity Services*, 430 F.2d 132, 133 (8th Cir. 1970); *Arnold v. Bache & Co.*, 377 F.Supp. 61, 65–66 (M.D.Pa.1973); *Johnson v. Arthur Espey, Shearson, Hammill & Co.*, 341 F.Supp. 764, 766 (S.D.N.Y.1972); *McCurnin*

*v. Kohlmeyer & Co.*, 340 F.Supp. 1338, 1343 (E.D.La.1972), *aff'd per curiam*, 477 F.2d 113 (5th Cir. 1973); *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440, 446–47 (N.D.Ill.1967).

In 1974 Congress amended the Act by passing the Commodities Futures Trading Commission Act. The new Act created the Commodity Futures Trading Commission (CFTC) and established an administrative procedure for redressing violations of any rule, provision, or regulation of the CEA, 7 U.S.C. § 18(e). Further, Congress added reparation procedures that may be initiated against futures commission merchants, floor brokers, commodity trading advisors, and commodity pool operators. A judgment rendered in a reparations proceeding is enforceable by a district court and reviewable on appeal. The 1974 and 1978 amendments also provided that the CFTC and state attorneys general may bring actions for injunctive relief, and for damages in the case of attorneys general, for violations of the CEA. 7 U.S.C. §§ 13a–1, 13a–2. The 1974 Act was intended to provide a thorough revision of statutory regulation over the commodity futures trading industry; however, the CEA does not specifically address the continuing validity of the pre-existing private right of action. Based on the panoply of these available remedies and their reading of the legislative history, defendants contend that an implied cause of action under the CEA and the CFTC regulations for fraud in connection with the purchase of commodity options does not exist.

Although courts addressing this issue are divided, the general and well-considered consensus is that a private right of action for fraud does exist under the CEA. In two recent decisions, the Second and Sixth Circuit Courts of Appeal so held after an extensive and exhaustive study of the question. *Leist v. Simplot*, 638 F.2d 283 (2d Cir. July 8, 1980) (reprinted in [1980] Comm.Fut. L.Rep. (CCH) ¶ 21,051), *petition for cert. filed*, 49 U.S.L.W. 3388 (U.S. November 12, 1980) (No. 80–757); *Curran*, 622 F.2d at 229–37. This Court is convinced that these

two cases provide the correct answer and are persuasive authority to that end. *See also Witzel v. Chartered Systems Corp. of New York, Ltd.*, 490 F.Supp. 343, 345–47 (D.Minn.1980); *Alken v. Lerner*, 485 F.Supp. 871, 875–79 (D.N.J.1980); *Smith v. Groover*, 468 F.Supp. 105, 112–15 (N.D.Ill. 1979); *R. J. Hereley & Son v. Stotler & Co.*, 466 F.Supp. 345, 347–49 (N.D.Ill.1979); *Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213, 216–21 (D.Kan.1979); *Poplar Grove Planting & Refining v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585, 589–91 (M.D. La.1979); *Hofmayer v. Dean Witter & Co.*, 459 F.Supp. 733, 737–38 (N.D.Cal.1978). *Contra, Mullis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 492 F.Supp. 1345, 1353–58 (D.Nev.1980); *Fischer v. Rosenthal & Co.*, 481 F.Supp. 53, 55–57 (N.D.Tex. 1979); *Berman v. Bache, Halsey, Stuart, Shields, Inc.*, 467 F.Supp. 311, 321–23 (S.D. Ohio 1979); *Consolo v. Hornblower & Weeks-Hemphill, Noyes, Inc.*, 436 F.Supp. 447, 454–55 (N.D.Ohio 1976); *Bartels v. International Commodities Corp.*, 435 F.Supp. 865, 870 (D.Conn.1977). Also, the Eighth Circuit has stated that private causes of action for violations of the CEA are "well recognized." *Merrill Lynch Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129, 133 n.7 (8th Cir. 1979) (citing *Hirk*, 561 F.2d at 103 n.8; *Deaktor*, 479 F.2d at 534; *Booth*, 430 F.2d at 133).

Due to the exhaustive treatment of this issue in the *Leist* and *Curran* opinions, it is unnecessary to prolong unduly this opinion with an in-depth analysis of every relevant authority or argument. Accordingly, only the salient reasons for this holding will be set forth.

The analysis must begin with the tests outlined in *Cort* for determining whether a private cause of action exists. The first element is clearly satisfied. Investors in the commodity markets are properly within the class for whose especial benefit the statute was enacted. From the legislative history of the 1974 amendments, it is apparent the primary purpose was to protect against manipulation of markets and to protect individuals who desire to participate in futures market trading. 7 U.S.C. § 6b; *see*

120 Cong.Rec. 30466 (1974) (remarks of Sen. Dole); 120 Cong.Rec. 34998–99 (1974) (remarks of Sen. Clark). *See also Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1179 (2d Cir. 1977).

Turning to the second, and more important factor, a careful review of the legislative history demonstrates Congressional awareness of the judicial recognition of private rights of action under the prior law and a desire to preserve them. *See Leist, supra*, at 24,177–88. In both the House Report, H.R.Rep.No.93–975, 93d Cong., 2d Sess. 45–48, U.S.Code Cong. & Admin.News 1974, p. 5843, and in the debate on the 1974 amendments, 119 Cong.Rec. 41333 (1973) (remarks of Rep. Poage), there are specific references to the existence of such actions. Further, there are no statements by any member of Congress that indicate disapproval of the private right of action concept. The exclusive jurisdiction provision of the CEA, 7 U.S.C. § 2, certainly indicates no intention to abolish the pre-1974 implied right of action, particularly in the light of the language of 7 U.S.C. § 2(a)(1) that "nothing in this section shall supersede or limit the jurisdiction conferred on the courts of the United States or any State." *See also* 120 Cong.Rec. 34997 (October 10, 1974); 120 Cong.Rec. 34737 (October 9, 1974). The reparations procedure established by the 1974 amendments likewise should be viewed as " 'a supplement to, rather than a substitute for, the existing private right of action.' " *Curran*, 622 F.2d at 234 (quoting *Groover*, 468 F.Supp. at 113–14). This conclusion is buttressed by the language of that section, which provides that any person "may" institute such proceedings; the implication arising that it is not the investor's only alternative for relief. An additional indication of Congressional intent can be found when the Congress saw fit to reject two bills allowing for recovery of treble damages, but avoided condemming private rights of actions in general. This may be viewed as Congressional reluctance to expand private recovery under the existing private right. *Alken*, 485 F.Supp. at 877.

The essential disputed issue is the method of statutory construction to be applied in the absence of express statutory language. Defendants argue that when a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. *Transamerica*, 444 U.S. at 19–20, 100 S.Ct. at 247. In light of the legislative history of the 1974 amendments, a more appropriate canon of construction is that the reenactment of a statute incorporates preceding judicial interpretation. *Leist, supra*, at 24,179 (citing *Van Vranken v. Helvering*, 115 F.2d 709, 710 (2d Cir. 1940) (L. Hand, J.), *cert. denied*, 313 U.S. 585, 61 S.Ct. 1095, 85 L.Ed. 1541 (1941)); *see Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *Curran*, 622 F.2d at 234 n.27. Since Congress knew of the prior holding in favor of a private rights of action, the conclusion must be drawn that its silence is an expression of approval.

The third element of *Cort*, whether the implication of a private right of action would be consistent with the underlying purposes of the legislation, is also satisfied. The primary purpose of providing protection from fraud and price manipulation to individuals trading in commodities futures is served by the allowance of private rights of action. There is no incompatibility between a private action and any of the CEA's provisions. The compatibility of private rights of action is furthered demonstrated by administrative interpretation by the CFTC. The CFTC has consistently interpreted the reparations provision as allowing commodity futures investors an election of forums and remedies in which to pursue their claims. *See* 41 Fed.Reg. 994 (1976); 41 Fed.Reg. 18472 at n.5 (1976); *Curran*, 622 F.2d at 235. A reparation claim will not even be entertained by the CFTC if civil litigation involving the same facts and parties has been instituted. 17 C.F.R. § 12.21(a)(7) (1979). Such expressions by the agency charged with the administration of the statute are entitled to substantial weight. *Cannon*, 441 U.S. at 706–08 & n.42, 99 S.Ct. at 1962–1963 & n.42.

The fourth *Cort* factor, whether the cause of action is one traditionally relegated to state law, 422 U.S. at 78, 95 S.Ct. at 2088, must, clearly, be answered in the negative. *Leist, supra*, at 24,189. The federal government has been involved with futures trading since 1922. Moreover, courts have held that 7 U.S.C. § 2(a)(1) preempts application of state law. *Leist, supra*, at 24,189.

■ The first and third of the *Cort* tests being answered in the affirmative and the fourth in the negative, and there being ample evidence of legislative intent, the Court finds that a private right of action exists under the CEA. *Id.; Curran*, 622 F.2d at 235. Accordingly, plaintiffs' commodities law claim involves a federal question, over which this court has jurisdiction. Defendants' motions to dismissal are without merit.

## IV.

The defendant Cayman Associates, Inc. has filed a motion for change of venue, pursuant to 28 U.S.C. § 1404. Defendant seeks to have this action transferred to the Northern District of Illinois, alleging it is a district where the action "might have been brought." *Id.* The motion is premised on the alleged convenience of the parties and the witnesses and that the transfer would be in the interest of justice. Defendant argues that both Cayman Associates-Murlas Brothers Commodities, Inc. and itself maintain their principal places of business in Illinois and would incur undue hardship if required to transport records and witnesses to Minnesota. Defendant further contends this forum has little or no connection with this matter and it would be in the interest of justice to transfer it to the Northern District of Illinois.

■ Plaintiffs present, however, a far more persuasive argument for maintaining the action here. Excessive transportation of documents and witnesses will be minimized since many, if not all, evidentiary issues will be resolved through stipulation, admissions, or other means of discovery. Much of the evidence and many of the key witnesses are located in Minnesota. Addi-

tionally, the claims allegedly arose in Minnesota. Defendant has failed to overcome the normal presumption in favor of a plaintiff's choice of forums. *Federal Deposit Insurance Corporation v. Citizens Bank & Trust Co. of Park Ridge, Illinois,* 592 F.2d 364, 368 (7th Cir. 1979), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.,* 462 F.2d 998, 1000 (8th Cir. 1972), *cited in Munsingwear, Inc. v. Damon Coats, Inc.,* 449 F.Supp. 532, 537 (D.Minn. 1978).

Based on the foregoing, the briefs, and arguments of counsel, IT IS HEREBY ORDERED that

1. Defendants' Motions to Dismiss are denied.

2. The Motion of Defendant Cayman Associates, Inc. for Change of Venue is denied.