BACHE HALSEY STUART, INC. v. GEORGE E. HUNSUCKER, JR.

No. 7726SC916

(Filed 7 November 1978)

1. Brokers and Factors § 4; Unfair Competition § 1— actions of commodities broker—unfair trade practices

The unfair trade practices statute, G.S. 75-1.1, will not support a cause of action against a commodities broker for activity which is regulated by the Commodity Exchange Act, 7 U.S.C.A. § 1 et seq. Therefore, defendant failed to state a claim for treble damages under G.S. 75-1.1 based on plaintiff broker's alleged unauthorized sale of futures contracts for defendant, unauthorized purchases of contracts to close out defendant's position, and subsequent liquidation of defendant's cash and margin accounts.

Bache Halsey Stuart, Inc. v. Hunsucker

**2. Appeal and Error §§ 5.1, 10.1— subject matter jurisdiction— raising question for first time on appeal**

   The question of subject matter jurisdiction may properly be raised for the first time on appeal, and the appellate court may raise the question on its own motion even when it was not argued by the parties in their briefs. G.S. 1A-1, Rule 12(h)(3).

**3. Contracts § 9— action on commodities account—futures contracts—G.S. 16-3**

   The question of whether futures contracts giving rise to a deficit in defendant's commodities account were traded on an exchange complying with the requirements of G.S. 16-3 was not before the appellate court where there has been entered no judgment, final order or any order of any kind relating to plaintiff's action which is reviewable.

APPEAL by defendant from *Graham, Judge.* Judgment entered 15 September 1977, Superior Court, MECKLENBURG County. Heard in the Court of Appeals 22 August 1978.

This action was initiated 16 February 1976 by Bache Halsey Stuart, Inc., a stock and commodities broker, to recover a deficiency created in defendant's commodities account. The deficiency arose as a result of the sale and purchase of Maine potato futures contracts. In his answer to the complaint, defendant included three counterclaims alleging negligence and mismanagement, unfair acts and practices in the conduct of a trade or business, and a class action seeking injunctive and declaratory relief for defendant and a similarly situated class consisting of commodities investors dealing with plaintiff.

The facts as alleged in defendant's counterclaims are as follows: The plaintiff is a stock and commodities broker registered with all major American exchanges. Plaintiff has a strong and highly qualified research department for the purpose of advising the plaintiff and his customers. The defendant had common stock in a cash account and margin account with plaintiff in August and September of 1975. Defendant had credit in his commodities account with plaintiff of $8,591.37 prior to defendant's being placed in a position in Maine potatoes.

On 4 August 1975, defendant authorized the plaintiff to sell six contracts of May 1976 Maine potatoes for him at a price of no less than 9.5. On or about 4 August 1975, plaintiff sold in defendant's name three contracts for May 1976 Maine potatoes at a price of 9.17. Futhermore, defendant alleges that on or about 4 August 1975, plaintiff sold in defendant's name three contracts at

9.37 per contract. As a result of the sale of these six contracts, the defendant became obligated to deliver six contracts of potatoes in May 1976. As of 4 August 1975, defendant owned no Maine potatoes and owned no contracts for the delivery of Maine potatoes in May 1976. Defendant was therefore "short" six contracts. Defendant alleges that because of rising market prices, he was already in a loss position after the unauthorized sale of these six contracts.

Allegedly acting on the advice of the plaintiff, defendant authorized further sales of contracts. On 5 August 1976, plaintiff sold for defendant four contracts at 9.65. On 7 August 1976, two contracts were sold at 9.73 and two contracts were sold at 9.74.

The defendant alleges that the plaintiff negligently gave defendant advice to sell contracts when the plaintiff's research staff had forecast rising potato prices which suggests that customers should buy, not sell, potato contracts. The following week, as the price on the market continued to rise, the defendant's "short" position placed him in even greater danger of suffering significant losses if he were required to close out his position.

To cover the defendant's obligations in the continually rising market, the plaintiff, allegedly without authorization, bought in defendant's name 14 contracts of potatoes at a price of $12.28. This purchase resulted in a loss on the potato market of $19,824. Plaintiff charged this deficit against defendant's credit, resulting in a balance due of $11,232.63. On 23 September 1975, plaintiff, contrary to defendant's directions, sold the stocks in defendant's cash and margin accounts and credited the amount received to the balance allegedly owed to the plaintiff. The plaintiff applied this $4,237.08 to the defendant's commodities account leaving a balance owing of $6,995.55.

The plaintiff, on 10 June 1977, made a combined motion for dismissal and summary judgment on the defendant's three counterclaims. On 15 September 1977, an order dismissing the second and third counterclaims was entered for failure to state a claim actionable under G.S. 75-1.1. The defendant's first counterclaim was not dismissed and the motion for summary judgment was similarly denied as to the first counterclaim.

From the order dismissing the second and third counterclaims, defendant appeals.

*Fleming, Robinson & Bradshaw, by C. Richard Rayburn, Jr., for plaintiff appellee.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Gaston H. Gage, for defendant appellant.*

MORRIS, Judge.

[1] The question defendant has presented to this Court is whether his second and third counterclaims allege a cause of action sufficient to withstand the plaintiff's motion to dismiss. G.S. 1A-1, Rule 12(b)(6). Defendant argues that plaintiff's unauthorized sale of futures contracts, unauthorized purchases of contracts to close out defendant's position, and subsequent liquidation of his cash and margin accounts constituted violations of the North Carolina unfair trade practices statute, G.S. 75-1.1, entitling him to treble damages and attorney's fees under G.S. 75-16 and G.S. 75-16.1. Plaintiff argues that the commodities brokerage business is not in "trade or commerce" as our Supreme Court has interpreted the coverage of the statute; and even if it is within the statute, it is not a violation of the standards imposed by that statute. Both plaintiff and defendant rely on the recent decision in *Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 233 S.E. 2d 895 (1977). For reasons discussed below, we find that decision not dispositive of this case.

The parties in their briefs point out that the commercial activity surrounding the commodities futures exchanges is a field highly regulated by federal statutes and administrative regulations under the Commodity Exchange Act, 7 U.S.C.A. § 1, *et seq.* Pursuant to the Commodity Futures Trading Commission Act of 1974, Pub. L. No. 93-463, 88 Stat. 1389, *et seq.*, which amended the Commodity Exchange Act, a regulatory commission was established and entrusted with enforcing the requirements and proscriptions of that Act. The jurisdiction of the Commission established by that Act is set out in 7 U.S.C.A. § 2 (Supp. 1978).

"* * * *Provided,* That the Commission shall have exclusive jurisdiction with respect to accounts, agreements (including any transaction which is of the character of, or is

commonly known to the trade as, an 'option', 'privilege', 'indemnity', 'bid', 'offer', 'put', 'call', 'advance guaranty', or 'decline guaranty'), and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 15a of this title: *And provided further*, That, except as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State. * * *"

The Act governs the conduct of parties involved in the commodities markets. It makes it unlawful for the employee of any member of a board of trade or commodity exchange "to cheat or defraud or attempt to cheat or defraud" a customer. 7 U.S.C.A. § 6b (Supp. 1978). The federal courts, in applying the Act, have held "[t]here is now no doubt that it is a violation of the Commodity Exchange Act for an account executive in the commodity brokerage business intentionally to carry on trading transactions not authorized by his customer." *Haltmier v. Commodity Futures Trading Commission*, 554 F. 2d 556, 560 (2d Cir. 1977). *See e.g., Silverman v. Commodity Futures Trading Commission*, 549 F. 2d 28 (7th Cir. 1977). It has also been held by an administrative agency that deliberate, wilful, and unauthorized trading by a commodities broker for the account of his customer violates 7 U.S.C.A. § 6b. We also note that the statute provides not only for suspension of brokers for violations of the Act, 7 U.S.C.A. § 9 (Supp. 1978), it also provides a complete administrative procedure for hearing customer complaints and provides for the award of monetary damages. 7 U.S.C.A. § 18 (Supp. 1978). There is full right of review to the appropriate United States Court of Appeals. *Id.* The exclusive nature of that procedure for redress against market members for damages resulting from a violation

of the Act is apparent from the cases dismissing actions for failure to exhaust administrative remedies. *Bartels v. International Commodities Corp.*, 435 F. Supp. 865 (D.C. Conn. 1977); *Consolo v. Hornblower & Weeks-Hemphill, Noyes*, 436 F. Supp. 447 (N.D. Ohio 1976).

In a very recent case the Supreme Court of Arkansas addressed the question, on demurrer, whether that State's securities commissioner could maintain a suit against a commodities broker to enjoin certain activity alleged to violate state securities laws. *International Trading, Ltd. v. Bell*, 556 S.W. 2d 420 (1977), *cert. denied*, 38 C.C.H. S.Ct. Bull, p. B2772 (12 June 1978). The Arkansas Court held that the state regulation of commodities brokers was pre-empted by the Commodity Exchange Act as amended by the Commodity Futures Trading Act as found in 7 U.S.C.A. § 2, and that the state court had no jurisdiction to issue an injunction based on the state securities act. The United States Supreme Court denied certiorari.

The *International Trading, Ltd.* case arose under a state securities statute. The provisions of that statute sought to be enforced against the appellant were intended to prevent fraud or deceit upon purchasers and investors in commodities futures. Ark. Stat. Anno., § 67-1236(a) (Repl. 1966). The remedy sought was an injunction to prevent appellant's continued "boiler room" like sales campaign tactics. The complaint alleged schemes to defraud and untrue statements of material fact. The Arkansas Court found that the Arkansas securities commissioner and the trial court were without authority to regulate conduct in the field of commodities futures in the face of a pervasive federal regulatory scheme and clear congressional intent to vest in the federal regulatory commission exclusive jurisdiction.

*International Trading, Ltd.*, is instructive on the delicate balance which must be struck between the traditional exercise of state police powers and the regulation on the national level of activity in interstate commerce. That Court found that although the enforcement of state regulatory acts would be precluded, traditional private causes of action such as fraud would be less likely to interfere with the federal scheme and thus would not necessarily be pre-empted. This observation is supported by and indicates the purpose of this language in 7 U.S.C.A. § 2: "Nothing

in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." Other courts have also suggested that if a customer's claim arises out of a violation of the common law he may take his claim to state court. *Arkoosh v. Dean Witter & Co., Inc.*, 415 F. Supp. 535 (D. Neb. 1976); *E. F. Hutton Co., Inc. v. Lewis*, 410 F. Supp. 416 (E.D. Mich. 1976).

We consider *International Trading, Ltd.* to be persuasive authority in our construction of the scope of G.S. 75-1.1. Although the case *sub judice* is a private action under an unfair trade practices act, the present relief sought and the implications of a finding that plaintiff's conduct constitutes an unfair act or practice could result in state regulations no less intrusive on the federal scheme than that struck down in Arkansas. A finding that plaintiff's conduct violated G.S. 75-1.1 would expose it to a host of legislatively created sanctions in addition to those sought in defendant's counterclaims. G.S. 75-14 establishes a cause of action in the Attorney General for injunctive relief against violations of G.S. 75-1.1. Furthermore, the Attorney General would be entitled to seek a court order to restore money or property or cancel any contracts obtained as a violation of the statute. G.S. 75-15.1. If the Attorney General were plaintiff in this action and were seeking injunctive relief as is defendant in his counterclaim, we would be disposed to find that the State regulation was pre-empted.[1] We decline to view this case differently because it is in the nature of a private action seeking damages and injunctive relief. Therefore, because of the well-established principle of statutory construction that courts should interpret statutes so as to avoid unconstitutionality (*see generally* 16 Am. Jur. 2d, Constitutional Law, § 144), we decline to hold that G.S. 75-1.1 will support a cause of action against a commodity broker for activity which is regulated under the Commodity Exchange Act, 7 U.S.C.A. § 1 *et seq.*

In passing we reiterate that the defendant is not without remedy for any injury suffered. He may turn to traditional common law actions to seek damages. It would be inappropriate for this Court to expand a traditional common law action into an unfair trade practice in the face of the pervasive federal regulatory

---

1. Injunctive relief is also available against violations of the anti-fraud provisions of the North Carolina Securities Act, G.S. Chapter 78A. G.S. 78A-8; 78A-47. The Secretary of State is authorized to initiate suits seeking injunctive relief. Assuming plaintiff's alleged conduct was deemed to violate our own securities act anti-fraud provisions (as such conduct violated the federal anti-fraud provisions), we would again be disposed to hold that State regulation was pre-empted.

scheme. Recognizing an act as an unfair trade practice creates remedies unavailable at common law and could involve the Attorney General and the courts of this State in the sphere of a highly volatile commercial activity in interstate commerce. Such an expansion of state regulatory power is improper when Congress has clearly expressed its intent to exercise exclusive jurisdiction over the activity of the commodity exchanges and has provided elaborate administrative procedures for the redress of grievances. *See generally* Johnson, *Commodity Futures Trading Act: Pre-emption as Public Policy*, 29 Vanderbilt L. Rev. 1 (1976).

[2, 3]   Finally, defendant has presented to this Court for the first time on appeal a "suggestion of lack of subject matter jurisdiction". The question of subject matter jurisdiction may properly be raised for the first time on appeal. G.S. 1A-1, Rule 12(h)(3). Furthermore, this Court may raise the question on its own motion even when it was not argued by the parties in their briefs. *Jenkins v. Winecoff*, 267 N.C. 639, 148 S.E. 2d 577 (1966). The defendant's assertion is based upon G.S. 16-3 which provides that, unless the contracts are traded on a recognized exchange whose rules and regulations require actual delivery of the commodity if demanded by either party, the courts of this State shall not have jurisdiction to entertain any suit brought upon a judgment based upon any such contracts. *See e.g., Paine et al v. Lambert*, 389 F. Supp. 417 (E.D. Tenn. 1975), *aff'd without opinion*, 524 F. 2d 1405 (5th Cir. 1976) (applying similar Tenn. statute). Though it may be inferred from defendant's allegations averring that the "plaintiff is a stock and commodity broker registered with all major American stock and commodity exchanges", it is not established by the record whether the contracts giving rise to defendant's account deficit were traded on an exchange complying with the requirements of the statute. That question, however is not properly before this Court. There has been entered no judgment, final order, or any order of any kind relating to *plaintiff's* action which is reviewable. *See Munchak Corporation v. McDaniels*, 15 N.C. App. 145, 189 S.E. 2d 655 (1972); 4 C.J.S., Appeal and Error, § 153(c) at 517. The trial court may, however, conclude that justice requires that plaintiff be allowed to amend its complaint to allege facts sufficient to indicate that the contracts complied with the requirements of G.S. 16-3.

For the foregoing reasons, the order of the trial court dismissing defendant's second and third counterclaims is

Affirmed.

Judges HEDRICK and WEBB concur.