**Gene J. PATRY, Plaintiff,**

v.

**ROSENTHAL & COMPANY and Arthur Goldstein, Defendants.**

**Civ. A. No. 81–1409.**

United States District Court, D. Kansas.

March 15, 1982.

C. Robert Bell, Wichita, Kan., for plaintiff.

Louis Clinton Burr, Gen. Counsel, Rosenthal & Co., Richard D. Greene, Morris Laing, Evans, Brock & Kennedy, Wichita, Kan., for defendants.

## ORDER OVERRULING DEFENDANTS' MOTION TO DISMISS

THEIS, District Judge.

This case is before the Court on defendants' motion to dismiss. Defendants claim that the Commodity Exchange Act (CEA) grants exclusive and preemptive adjudicatory jurisdiction for broker-customer disputes such as are involved in this case to the reparations forum conducted by the Commodity Futures Trading Commission (CFTC). Defendants further claim that even if this Court finds no preemption of jurisdiction, the Court should exercise the doctrine of primary jurisdiction in favor of the CFTC and refrain from deciding this case.

An examination of the 1974 Amendments to the CEA, the legislative history, case law, and scholarly commentary, leads the Court to conclude in this case there has been no preemption, primary jurisdiction does not apply, and thus defendants' motion to dismiss must be overruled.

*Preemption*

The doctrine of preemption is derived from the supremacy clause of Article VI of the Constitution. In this case, Congress exercised its power under the Commerce Clause to regulate commodity trading, and where Congress has exercised a granted power, its legislation may displace state law by virtue of the supremacy clause. As noted by the distinguished constitutional scholar, Gerald Gunther:

"[P]reemption occurs not only when there is an outright conflict between the federal scheme and the state requirement. State authority is barred as well when congressional action is an *implicit* barrier; when state regulation would interfere unduly with the accomplishment of congressional objectives. Determination of congressional requirements and purposes must start of course with the congressional statute itself, and the cases accordingly require a particularized examination of the specific regulatory scheme."

Gunther, "Constitutional Law Cases and Materials," 357 (1975).

The Supreme Court has frequently wrestled with the question of preemption and has set forth guidelines to be considered when the possibility of preemption is an issue.

In *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), the Court said:

"This Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula."

*Hines v. Davidowitz*, 312 U.S. at 67, 61 S.Ct. at 404.

In *Rice v. Santa Fe Elevator Commission*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), the Court states its assumption that historic police powers were not to be superseded by federal legislation unless that was the "clear and manifest purpose of Congress." 331 U.S. at 230, 67 S.Ct. at 1146. The Court noted that such purpose may be evidenced in a number of ways: (1) the scheme of federal regulation might be so pervasive as to infer that Congress left no supplemental role to the States; (2) the federal interest may be so dominant that it is presumed that the federal system precludes state laws on the same subject; (3) the object sought by federal law and the character of obligations imposed may preclude state law; and (4) state policy may be precluded because it produces inconsistent results.

In the important case of *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), the Court pointed out:

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the related subject matter permits no other conclusions, or that the Congress has unmistakably so ordained."

373 U.S. at 142, 83 S.Ct. at 1217.

The Court has continued to show some caution in examining the issue of preemption:

"We reject, to begin with, the contention that preemption is to be inferred merely from the comprehensive character of the federal work incentive provisions.... The subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem."

*New York State Department of Social Services v. Dubling*, 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688 (1973).

The *Dubling* Court quoted the following language from *Schwartz v. Texas*, with approval:

"If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed. *Schwartz v. Texas*, 344 U.S. 199, 202–203, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952)."

*New York State Dept. of Social Services v. Dubling*, 413 U.S. at 414, 93 S.Ct. at 2513.

It must not be forgotten, however, that: "[W]hen Congress has chosen to legislate pursuant to its constitutional powers, then a court must find local law preempted by federal regulation whenever the 'challenged state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."' *Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971), quoting *Hines v. Davidowitz*, supra, at 67–68, 61 S.Ct. at 404".

*Chicago & N. W. Transp. v. Kalo Brick & Tile*, 450 U.S. 311, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981).

Almost all cases dealing with preemption concern the preemption of state *statutes.* Relatively few cases have dealt with the issue of preemption of state common law claims. See *Rogers v. Ray Gardner Flying Service, Inc.*, 435 F.2d 1389 (5th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 546 (1971); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir. 1980); *Smith v. Cessna Aircraft Corp.*, 428 F.Supp. 1285 (N.D.Ill.1977); *Harper and Row Publishers, Inc. v. Nation Enterprises*, 501 F.Supp. 848 (S.D.N.Y.1980). One such case contains an admonition that applies to the case at hand:

"[W]e should not find that Congress intended to deny Iowa the right to vindicate in its chosen manner its overriding state interest in redressing unjust enrichment and fraud, an interest historically and deeply rooted in its common-law tradition, 'unless that was the clear and manifest purpose of Congress.' *Rice v.*

*Santa Fe Elevator Commission*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)."

*Iconco v. Jensen Construction Co.*, 622 F.2d 1291, 1296 (8th Cir. 1980).

In applying the legal standards reviewed above, the Court first will examine the legislation which defendants claim as the basis for preemption.

In 1974, Congress extensively amended the CEA and created the CFTC. Section 2(a) of the 1974 Amendments provides, in pertinent part, in 7 U.S.C. § 2:

"*Provided*, That the Commission shall have exclusive jurisdiction with respect to accounts, agreements ... and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title...."

In the 1974 amendments which created the CFTC, Congress created a reparations forum at the CFTC, which a complainant "may" elect to use. 7 U.S.C. § 18. Defendants rely on the grant of "exclusive jurisdiction" to the CFTC and the creation of the reparations procedure in support of their preemption argument.

Defendants fail to discuss, however, how this grant of "exclusive" jurisdiction is affected by the savings clause included in the 1974 Amendment and is now contained in 7 U.S.C. § 2, along with the above quoted language from that section.

"Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State."

7 U.S.C. § 2.

This "savings clause" was not part of the House version of the legislation, but was added by the Senate Agriculture and Forestry Committee. The inspiration for the savings clause was apparently the testimony by Congressman Peter W. Rodino, Chairman of the House Judiciary Committee, filed before the Senate Agriculture and

Forestry Committee. Congressman Rodino expressed a number of concerns about the House legislation, including the fear that the "exclusive jurisdiction" language might oust the courts' jurisdiction over typical state law claims.

> "Many of the millions of commodity futures contracts are presently enforceable in State courts under recognized commercial law and contract principles. This double proviso could, in effect, deprive State courts of their current jurisdiction."

Hearings on S.2485, S.2837, and H.R. 13,113 before the Senate Committee on Agriculture and Forestry, 93rd Cong., 2d Sess. (1974) at 260.

While the report of the Senate Committee failed to explain the purpose of the savings clause, Senator Talmadge, the Committee Chairman, remarked on the Senate floor:

> "The vesting in the Commission of the authority to have administrative law judges and apply a broad spectrum of civil and criminal penalties is likewise not intended to interfere with the courts in any way."

120 Cong.Rec.S. 16,128 (Sept. 9, 1974).

The legislative history does reveal, however, that Congress intended to vest great authority in the CFTC.

> "Under the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act (and the regulations issued by the Commission) would preempt the field insofar as futures regulation is concerned. Therefore if any substantive State law regulating futures trading was contrary to or inconsistent with Federal law, the Federal law would govern. In view of the broad grant of authority to the Commission to regulate the futures trading industry, the Conferees do not contemplate that there will be a need for any supplementary regulation by the States."

1974 U.S.Code Cong. & Adm.News, p. 5843, 5897.

Some tension appears to exist between the grant of "exclusive" jurisdiction to the CFTC and the savings clause stating that state and federal court jurisdiction is not limited or superseded. While the legislative history is not fully illuminating, the Court would conclude that while it appears Congress intended to make the CFTC the exclusive regulatory agency to deal with commodity trading, as opposed to other federal or state agencies, and may well have intended that state statutes *regulating* the commodity market be preempted, the statutory language and legislative history certainly do not indicate to the Court that Congress wished to preempt state common law claims such as fraud or breach of contract.

The Court's conclusion is shared by many, including courts, commentators and the CFTC itself. In 1976, the CFTC stated that its reparations procedure was only one remedy and noted the availability of other remedies, including "the filing of a lawsuit in an appropriate state or federal court." 41 Fed.Reg. 3994 (Jan. 27, 1976). See also 41 Fed.Reg. 18471 (May 4, 1976); 40 Fed.Reg. 55667 (Dec. 1, 1975). In an *amicus* brief filed with the Second Circuit in *Leist v. Simplot*, 638 F.2d 283 (2nd Cir. 1980), the CFTC stated:

> "Private damage suits under the Act are consistent and may coexist with the forums expressly provided by Congress for the adjudication of complaints of futures traders—Commission reparation proceedings and contract market arbitration proceedings. The Commission has carefully harmonized these three rights that, in its view, have offered a commodity trader an election of remedies since 1974."

While the issue of a private cause of action based on the CEA is not before the Court, it is clear that the Commission does not view its own reparations procedure as the sole remedy available to the disgruntled. The consistent construction of a statute by the enforcing agency is entitled, of course, to great deference by the Court. *United States v. Consumer Life Insurance Co.*, 430 U.S. 725, 751–752, 97 S.Ct. 1440, 1454, 52 L.Ed.2d 4 (1977). This is especially true "when it involves a contemporaneous construction of the Act by the officials

charged with setting its machinery in motion...." *Chemehuevi Tribe of Indians v. Federal Power Comm.*, 420 U.S. 395, 409–410, 95 S.Ct. 1066, 1075, 43 L.Ed.2d 279 (1975).

Defendant has cited two cases, and the Court has discovered two others, in which it was held that the 1974 Amendments to the CEA preempted state *statutes* regulating commodities trading.

In *Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C.App. 414, 248 S.E.2d 567 (1978), the Court dismissed an action based on the state unfair trade practices statute (which provided for treble damages and fees) and, in dicta, held that an action under the State Securities Act would also be preempted.

In *International Trading, Ltd. v. Bell*, 262 Ark. 244, 556 S.W.2d 420 (1977), the Court held that a suit by the Arkansas Securities Commission under the Arkansas Securities Act was preempted by the CEA because it was the intent of Congress that the CFTC would "supersede the jurisdiction of all state and federal agencies."

In *State v. Monex International, Ltd.*, 527 S.W.2d 804 (Tex.App.1975), the Court held that the 1974 CEA Amendments preempted the Texas Securities Act.

In *Haines v. First Commodity Corp. of Boston*, CCH Com.Fut.L.Rep. § 21,088 (Mass.Sup.Ct.1980), the Court held that a private action under state consumer protection statutes for alleged deceptive practices in the sale of commodity options would not be allowed.

Finally, it was held that a state gambling statute purporting to void all futures transactions in which delivery was not contemplated was preempted because the statute would conflict with the federal statutory scheme and destroy the commodity market in Alabama. *Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F.Supp. 202 (N.D.Ala.1981).

Not all challenged state statutes have been found to have been preempted. In *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585 (M.D.La.1979), *reversed on other grounds*, 600 F.2d 1189 (5th Cir. 1980), defendant argued that the Louisiana law of mandate should not apply. The Court held, however, that:

> "The law of mandate is not intended, nor does it attempt to *regulate the operations of the commodity market.* The mandate law exists to control the relationships between principal and agent. The distinction must be made between regulation of the market and control over agent-principal relationships. Preemption of the regulation of the market does not also mean preemption of all law that might involve participants in the market."

465 F.Supp. at 592.

No cases, however, have been discovered in which state common law claims have been held preempted by the CEA. In fact, the North Carolina and Arkansas courts which struck down actions based on state regulatory statutes, specifically noted the availability of state common law actions. The North Carolina Appellate Court said:

> "[W]e reiterate that the defendant is not without remedy for any injury suffered. He may turn to traditional common law actions to seek damages."

*Bache Halsey Stuart, Inc. v. Hunsucker,* supra, 248 S.E. at 570.

The Arkansas Court observed:

> "We do not agree with appellee that preemption will prevent the state from protecting its citizens from fraud. There is no reason why the state cannot prosecute an offender under such provisions as § 41–2203 (Crim.Code, 1976). There is no bar of actions by persons defrauded to recover money obtained from them by fraud. Such actions could not constitute any realistic threat of interference with the federal regulatory scheme and the act certainly does not afford protection of fraudulent conduct."

*International Trading, Ltd. v. Bell,* supra, 556 S.W.2d at 425.

Numerous other courts have recognized that state common law claims exist in the commodities field. In *E. F. Hutton & Co., Inc. v. Lewis*, 410 F.Supp. 416 (E.D.Mich. 1976), the Court noted:

"Even if there was no violation of federal securities statutes, the complaint states facts which would constitute a number of perfectly good state law claims, perhaps including fraud, breach of contract, breach of fiduciary duty, and conversions. The Court would have jurisdiction over these claims ... by virtue of the diversity of citizenship of the parties."

410 F.Supp. at 419. See also, *Walsh v. International Precious Metals Corp.*, 510 F.Supp. 867 (D.Utah 1981); *Arkoosh v. Dean Witter & Co., Inc.*, 415 F.Supp. 535 (D.Neb.1976); *Milani v. ContiCommodity Services, Inc.*, 462 F.Supp. 405 (N.D.Cal. 1976); *Iowa Grain v. Farmers Grain and Feed Co., Inc.*, 293 N.W.2d 22 (Iowa 1980).

In fact, one case is directly on point with this case. In *Witzel v. Chartered Systems Corp. of N. Y.*, 490 F.Supp. 343 (D.Minn. 1980), the defendant contended that the "exclusive jurisdiction" language in the 1974 Amendments to the CEA meant that Congress intended to preempt all state statutes *and* common law claims against futures commission merchants. While the Court agreed that the CEA preempts private actions based on federal or state statutes which would interfere with the CFTC and its jurisdiction over commodity options:

"The Court has concluded that as the remaining state law claims envision no administrative agency involvement which might conflict with the CFTC's regulatory role, and as 7 U.S.C. § 2 specifically limits the CFTC's role by not depriving federal or state courts of their respective jurisdictions, the other state related claims asserted by plaintiff are not preempted by the Act."

490 F.Supp. at 347–348.

The Court's review of a large body of scholarly commentary on the CEA and the CFTC reveals that a number of learned commentators also have concluded that state common law claims are not preempted by the CEA. A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud*, § 460 (1981); Rosen, *Reparations Proceedings Under the Commodity Exchange Act*, 27 Emory L.J. 1005 (1978); Scheider & Na-

than, *Jurisdiction of the Commodity Futures Trading Commission*, in *Commodities and Futures Trading 1976*, Corporate Law and Practice Course Handbook No. 223. See Frankhouser, *Who May Sue Whom & Where*, in *Commodities and Futures Trading 1976*, supra; Johnson, *The Commodities Futures Trading Commission Act: Preemption as Public Policy*, 29 Vanderbilt Law Review 1 (1976); Note, *Commodity Futures Litigation: A By-Product of Investor Roulette*, 30 Drake L.Rev. 599.

■ After considering the statutory language and legislative history, the case law, and the scholarly commentary, the Court concludes that state common law claims such as are raised by the plaintiff in this case are not preempted by the CEA. While the federal scheme may be so pervasive as to preempt any action under state regulatory statutes, the Court cannot find any evidence that Congress intended to go so far as to preempt state common law claims. In fact, the legislative history would seem to indicate that Congress adopted the savings clause partly to insure no preemption of such claims. The CFTC itself recognizes the role of private lawsuits in combating commodities fraud, and this Court is unable to see how private common law suits such as this could interfere with or obstruct in any way the regulatory scheme embodied in the CEA.

*Primary Jurisdiction*

■ Defendants urge this Court to adopt the doctrine of primary jurisdiction in this case if the Court decides there is no preemption. Primary jurisdiction is a judicially created doctrine which allows the Court to defer to an administrative agency for the initial resolution of some disputes.

"The doctrine of primary jurisdiction 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.' *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956). Even when common-law rights and remedies survive and the agency in question

lacks the power to confer immunity from common-law liability, it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure '[u]niformity and consistency in the regulation of business entrusted to a particular agency' or where

'the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.' *Far East Conference v. United States*, 342 U.S. [570] at 574–575, 72 S.Ct. [492] at 494, 96 L.Ed. [576] at 582.' "

*Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–304, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976).

This Court declines to exercise the doctrine of primary jurisdiction. In the Court's view, the claims raised by plaintiff are well within the expertise of this Court and in deciding these claims, the Court does not require any esoteric knowledge of commodities markets peculiarly within the possession of the CFTC. The case does not involve interpretation of regulations promulgated by the CFTC or put the Court in a position of conflict with the CFTC.

The CFTC has taken the following position on this issue:

"[P]rivate litigation seeking damages for alleged violations of provisions of the Act will rarely, if ever, involve issues appropriate for review by the Commission under the doctrine of primary jurisdiction. The judicial resolution of a private legal action, for example, requires only the application of specific statutory standards to the particular conduct alleged. The issues raised by a particular fraudulent scheme, however complicated, are entirely within the conventional ability of the courts to resolve and should therefore not occasion referral to the Commission. If a court wishes the Commission to express its view on questions of law raised in litigation, it may request the Commission's participation as amicus curiae without unnecessary disruption or delay of the proceedings."

41 Fed.Reg. 18471 (May 4, 1976).

The Court agrees totally with the above reasoning of the CFTC. The Court would also note that the case law supports the CFTC's position that it is not appropriate to defer to the CFTC in common law actions under theories such as fraud or breach of contract. *Alken v. Lerner*, 485 F.Supp. 871 (D.N.J.1980); *Smith v. Groover*, 468 F.Supp. 105 (N.D.Ill.1979); *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.*, 423 F.Supp. 559 (S.D.Fla.1976). In this District, Judge Rogers, one of our learned judges, wrote the following language in a scholarly opinion, which applies equally as well to the case at hand:

"It therefore appears to the court that this action should not be stayed pending presentation of the issues therein to the CFTC. There is no indication that the Commission would welcome the case, and we fail to see that any of the issues herein are beyond the capacity of this court to understand or evaluate. We decline to invoke the doctrine of primary jurisdiction in this case."

*Jones v. B. C. Christopher & Company*, 466 F.Supp. 213, 223 (D.Kan.1979).

IT IS THEREFORE ORDERED that the defendants' motion to dismiss is overruled.