Brian **PETTIGREW** and Valerie **Pettigrew, Plaintiffs,**

v.

**OPPENHEIMER & CO., INC., Defendant.**

**Civ. A. No. 80–2417–S.**

United States District Court, D. Massachusetts.

Feb. 29, 1984.

Thomas R. Paxman, Warren Fitzgerald, Hutchins & Wheeler, Boston, Mass., for plaintiffs.

Andrew Higgins, Casner, Edwards & Roseman, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This is an action to recover for damages sustained by unauthorized trading in commodities futures. The plaintiff's complaint alleges breach of contract, breach of fiduciary duty, unauthorized trading, failure to supervise handling of the account, and unfair and deceptive practices in violation of the Massachusetts consumer protection statute, M.G.L. c. 93A. The defendant's counterclaim alleges that the plaintiffs owe the defendants slightly more than $20,000. The defendant has moved to dismiss the c. 93A claim.

The plaintiffs, Brian and Valerie Pettigrew, allege the following facts. In June, 1979, a regional vice-president of the defendant ("Oppenheimer"), Bruce S. Tuthill ("Tuthill"), sent a letter to the plaintiffs offering to establish an investment program on their behalf. The program recommended that a maximum of $15,000 be invested in interest rate futures. The plaintiffs accepted Tuthill's offer, and transmitted $60,000 to Oppenheimer's Boston office.

Brian Pettigrew informed Tuthill that he had little knowledge of commodity futures trading and that he would rely on Tuthill for information and explanations regarding his account. Tuthill told the Pettigrews that the method of trading in which he engaged involved only a minimum of risk. On August 6, 1979, Brian Pettigrew signed a Conti Commodity Services ("CCS") "customer agreement". On August 18, 1979, the plaintiffs received a CCS "margin request notice". After a phone call from Brian Pettigrew, Tuthill indicated that a futures position had been taken for the plaintiff's account and that subsequent margin request notices should be ignored.

On October 3, 1979, Tuthill informed the Pettigrews that their account had suffered a substantial loss. After receiving several conflicting reports concerning the extent of their loss, the plaintiffs learned on October 11, 1979 that their entire $60,000 investment had been lost and that they owed an additional $11,000. Subsequently they learned that their additional liability was actually $20,458.39.

The issue presented by the plaintiffs' motion is whether M.G.L. c. 93A applies to commodities futures trading. In *Freimarck v. First National Monetary Corporation*, No. 81–1656–S (D.Mass., January 14, 1982), I held that c. 93A does not apply to acts and practices relating to commodities futures trading. In view of recent developments in the jurisprudence of c. 93A, I have reexamined the issue and arrived at a different opinion.

In *Freimarck*, I relied upon the Supreme Judicial Court's holding in *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 766, 407 N.E.2d 297 (1980) that c. 93A incorporates the extensive body of federal administrative and decisional law under the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). Since I had not found any cases in which alleged deception in the sale of commodities contracts stated a claim under this section of the Federal Trade Commission Act, I took the view that c. 93A did not apply to such claims. Other district court judges used similar reasoning in holding that c. 93A does not apply to securities transactions. *See, e.g., Palace v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, No. 80–1831–T (D.Mass. Aug. 3, 1981).

■ There is a growing consensus that the approach I followed in *Freimarck* was

undercut by the Supreme Judicial Court's holding in *Raymer v. Bay State National Bank*, 384 Mass. 310, 424 N.E.2d 515 (1981), that the fact that banks are exempted from the Federal Trade Commission Act because they are regulated by a different federal agency does not require a similar exemption from c. 93A. In *Mitchelson v. Aviation Simulation Technology*, 582 F.Supp. 1 (D.Mass.1983), I adopted Judge Mazzone's careful reasoning in *Kennedy v. Josephthal & Co., Inc.*, No. 82–913–MA (D.Mass., June 29, 1982) and concluded on the basis of *Raymer* that c. 93A applies to securities transactions. *See also Redstone v. Goldman, Sachs & Co.*, 583 F.Supp. 74 (D.Mass.1984). The logic of these opinions compels me to conclude that, absent federal preemption, c. 93A can apply to cases involving commodities futures contracts. *Accord, Sullivan v. Dean Witter Reynolds, Inc.*, No. 82–3300–K (D.Mass., June 9, 1983).

The only remaining consideration is whether the Commodity Exchange Act ("the Act"), 7 U.S.C. § 1 *et seq.*, preempts any application of c. 93A to actions involving commodity futures. This issue is a complex one about which courts have disagreed.

■ Federal regulation of a field of commerce should not be deemed preemptive of state regulatory power unless either the nature of the regulation permits no other conclusions or Congress has made its intent to preempt state regulation unmistakably clear. *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). A court cannot infer an intent to preempt merely from the comprehensive character of complex legislation. *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 415, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973).

In 1974, Congress amended the Act and created the Commodity Futures Trading Commission ("CFTC"). Section 2(a) of the 1974 Amendments provides in relevant part that:

... the Commission shall have exclusive jurisdiction with respect to accounts, agreements ... and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title...

This language must be reconciled with another part of this section, which states that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State". 7 U.S.C. § 2.

In *Patry v. Rosenthal*, 534 F.Supp. 545, 548–552 (D.Kan.1982), Judge Theis analyzed the extent to which the Act preempts state authority to provide remedies for wrongs relating to commodity futures trading. He concluded that there is a consensus that the Act does not preempt state common law claims, such as fraud, contract, and tort. *Id.* at 550 (and cases and commentary cited therein).

No consensus exists as to the extent to which the Act preempts state statutes. Courts have held that the Act preempts a state statute on at least five occasions. *See Haines v. First Commodity Corporation of Boston*, CCH Com.Fut.L.Rep. § 21,-088 (Mass.Sup.Ct.1980) (93A); *Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C. App. 414, 248 S.E.2d 567 (1978) (consumer protection statute similar to c. 93A); *International Trading, Ltd. v. Bell*, 262 Ark. 244, 556 S.W.2d 420 (1977) (state securities statute); *State v. Monex International, Ltd.*, 527 S.W.2d 804 (Tex.Civ.App.1975) (state securities statute); *Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F.Supp. 202 (N.D.Ala.1981) (state gambling statute prohibiting futures trading when delivery is not contemplated); *but see, Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585 (M.D.La.1979) (Louisiana mandate statute not preempted by Act even when applied to commodity futures trading).

In *Haines*, the court stated that the Act "sets forth a comprehensive scheme for the regulation of interstate trading in commodities futures". Slip op. at 5. It relied heavily on the section of § 2 which grants the Commission exclusive jurisdiction, and held that the Act has a preemptive effect because it provides for a comprehensive scheme. Similar reasoning guided the courts in the other four cases cited in the previous paragraph.

The minority view was first expressed in *Poplar Grove, supra.* In *Poplar Grove,* the court focused attention on the following passage from the House conference report concerning the 1974 amendments:

> Under the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act (and the regulations issued by the Commission) would preempt the field insofar as futures regulation is concerned. Therefore, if any substantive State law regulating futures trading was contrary to or inconsistent with Federal law, the Federal law would govern. In view of the broad grant of authority to the Commission to regulate the futures trading industry, the Conferees do not contemplate that there will be a need for any supplemental regulation by the States. Report No. 93–1383, 1974 Cong. and Admin. News, p. 5843, 5897.

The court in *Poplar Grove* interpreted this passage as meaning that the Act preempts laws which attempt to alter the federal regulatory scheme, and does not preempt laws governing ordinary civil relationships which arise out of commodity transactions. *Accord, Patry, supra* at 548–552. Although this distinction may be blurred in certain circumstances, it is a distinction supported by both constitutional mandate and common sense. The fact that the most recent amendments to the Act state specifically that the Act does not supersede or limit the jurisdiction of state courts indicates clearly that Congress did not intend that the CFTC adjudicate every dispute relating to commodities.

 Since the Act does preempt statutes which attempt to alter the operation of commodities markets, *see, Conaway, supra,* it is fair to ask whether the treble damage and attorney fee provisions of c. 93A tip the industry-consumer balance sufficiently to disrupt the Congressional scheme. I conclude, however, that at least insofar as the c. 93A claim states essentially the same cause of action as a common law misrepresentation or contract claim, *see Capp Homes v. Duarte,* 617 F.2d 900 (1st Cir.1980), it is not preempted by the Act.

Accordingly, the defendant's motion is DENIED. The deputy clerk shall schedule a pretrial conference to be held within ninety days of the date of this order.