**Clarence E. SCHOFIELD and Rebecca J. Schofield**

v.

**FIRST COMMODITY CORPORATION OF BOSTON.**

C.A. No. 83–4137–Z.

United States District Court, D. Massachusetts.

April 29, 1985.

Judgment affirmed, 1st Cir., 793 F.2d 28.

**6**

Harry A. Garfield II, Glen DeValerio, Berman, DeValerio & Pease, Boston, Mass., for plaintiff.

Jeffrey V. Boxer, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff Rebecca Schofield alleges that employees of defendant First Commodity Corporation of Boston ("FCCB") fraudulently induced her and her husband, now deceased, to invest all of their liquid assets in trading commodity futures. She claims that FCCB persuaded her to open an account without adequately disclosing the risks associated with such trading and with knowledge that the Schofields—elderly individuals living off the income derived from their assets—were not suited to commodity speculation. FCCB, she alleges, then trad-

ed the Schofields' account in a manner calculated to maximize fees and to lose money, thereby resulting in a loss of approximately $28,000 and in fees of more than $66,000. Plaintiff asserts that this single course of conduct gives her multiple causes of action under § 10(b) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) (1982) (Count I), § 4b(A) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b(A) (1982) (Counts II & III), and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964(c) (1982) (Count IV). She now moves to amend her complaint to state a fifth count under Mass.Gen.Laws Ann. ch. 93A (1984). FCCB opposes plaintiff's motion to amend and also moves for summary judgment on Counts I to IV of the complaint.

### I. *The Commodity Exchange Act Claim*

■ If the complaint states any claim, it states one under the Commodity Exchange Act. Defendant seeks summary judgment on this claim by arguing that there is no dispute that it apprised Mrs. Schofield—by means of a risk disclosure statement which she signed, a form letter advising her of risks, and a telephone conversation recorded with her consent—of the substantial risks associated with trading commodity futures. But Mrs. Schofield claims that she did not understand these various statements and that she relied on contradictory assurances from FCCB employees that in fact the risks were not so substantial. Plaintiff thus has raised an issue of fact concerning the adequacy of FCCB's disclosures and possible misrepresentations by FCCB employees, and summary judgment on the central CEA claims, Counts II and III, therefore, is inappropriate. Because this is a sufficient ground to deny summary judgment on these counts, I do not consider defendant's additional argument that there are no suitability rules under the CEA.

### II. *The Securities Exchange Act Claim*

■ FCCB argues that plaintiff does not have a claim under the SEA because her

investment agreement with FCCB was not a "security" within the meaning of the federal securities laws. 15 U.S.C. §§ 77b(1), 78c(a)(10) (1982). The test for identifying an "investment contract" as a "security" was established in *Securities Exchange Commission v. Howey,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946), and has three elements: (1) an investment of money; (2) in a common enterprise; (3) with profits derived solely from the efforts of others. The parties agree that the focus of the dispute in this case is on the common enterprise element.

There currently is a debate among the circuit courts of appeals over what types of arrangements constitute common enterprises. The narrowest view requires horizontal commonality, usually evidenced by a pooling of assets from two or more investors into a single investment fund. *Curran v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.2d 216 (6th Cir.1980), *aff'd on other grounds,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Milnarik v. M–S Commodities, Inc.,* 457 F.2d 274 (7th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). The Fifth Circuit has found a common enterprise where the arrangement is nothing more than a vertical agency relationship between the investor and a broker. *Securities Exchange Commission v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974). The Ninth Circuit and the Southern District of New York have adopted an intermediate vertical position: not finding a common enterprise where the relationship is a simple commission agency but finding that a contract in which the broker's fortunes are tied directly to the investor's success satisfies the commonality requirement. *Mordaunt v. Incomco,* 686 F.2d 815 (9th Cir.1982), *cert. denied,* — U.S. —, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985); *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225 (S.D.N.Y.1981). Although the First Circuit has not addressed the issue, two judges in this district have endorsed the middle or narrow vertical commonality approach. *Margaret Hall Foundation v. Atlantic Financial Mgmt., Inc.,* 572 F.Supp. 1475 (D.Mass.1983) (Tauro, J.); *Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982) (Tauro, J.); *Holtzman v. Proctor, Cook & Co., Inc.,* 528 F.Supp. 9 (D.Mass.1981) (McNaught, J.). I also adopt this position.

Plaintiff urges that even horizontal commonality is present here because for some period of time FCCB traded her account using a "technical system" for commodity trading. Even if this proves to be true, however, it would not show any type of commonality except the broad vertical relationship recognized in the Fifth Circuit. A horizontal common enterprise is a pool of assets traded as a single fund, not separate accounts traded according to a similar or even identical investment strategy. *See Holtzman,* 528 F.Supp. at 15–16; *Savino,* 507 F.Supp. at 1237. FCCB charged a fixed fee for each commodity position taken. Thus, "narrow vertical commonality" also was lacking because the broker's profits were not influenced by the success or failure of the trading in the account. The Schofields' investment contract therefore was not a "security," and FCCB is entitled to summary judgment on the SEA claim.

## III. *The RICO Claim*

With Count IV of her complaint, plaintiff plants her claim in the center of the shifting morass of civil RICO litigation. She does so with beguiling simplicity by incorporating the other allegations of the complaint, hinting at "numerous violations of RICO" through interstate use of the mails and telephone system, and then alleging that all of this states a claim under 18 U.S.C. §§ 1961, 1962(c) (1982), which entitles her to treble damages, attorney's fees, and costs under 18 U.S.C. § 1964(c) (1982). FCCB seeks summary judgment on this count because plaintiff has failed to allege a RICO violation by a "person" or persons separate from the RICO "enterprise." *See Van Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125, 1135–36 (D.Mass.1982). Plaintiff responds that the holding in *Van Schaick* has been

questioned in other jurisdictions and should not be followed. Even if it is good law, she argues—and although she has not pleaded these elements clearly—FCCB is the "enterprise," FCCB's brokers are the "persons," and, by *respondeat superior*, FCCB is liable for its brokers' violations of RICO.

Section 1962(c), the substantive RICO section on which plaintiff relies, provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1982). In *Van Schaick*, the court read the language of this subsection plainly to require that the "person" who engages in the pattern of racketeering activity be an entity distinct from the "enterprise." 535 F.Supp. at 1135–36. It is true that the separate person/enterprise interpretation of § 1962(c) has been rejected by some courts. *See, e.g., United States v. Hartley*, 678 F.2d 961, 987–90 (11th Cir.1982) (corporation can be defendant and "enterprise" in criminal RICO prosecution), *cert. denied*, 459 U.S. 1170, 1183, 103 S.Ct. 815, 834, 74 L.Ed.2d 1014 (1983); *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1082–84 (D.Del.1984) (*respondeat superior* applies in civil RICO case to make employer/"enterprise" potentially liable for violations of employee/"person"); *B.F. Hirsch, Inc. v. Enright Refining Co.*, 577 F.Supp. 339, 346–47 (D.N.J.1983) ("person" and "enterprise" are not mutually exclusive elements). But the weight of authority supports the reading of the statute adopted in *Van Schaick*. *See, e.g., Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984) (corporation/"enterprise" not liable under § 1962(c) as passive instrument of liable "persons"), *cert. granted*, —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985); *Rae v. Union Bank*, 725 F.2d 478,

480–81 (9th Cir.1984) (corporation cannot be "enterprise" and defendant); *Bennett v. Berg*, 685 F.2d 1053, 1061–62 (8th Cir.1982) (count against corporation only dismissed for failure to allege separate "person" and "enterprise"), *aff'd*, 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982) (separate "person" and "enterprise" required in criminal case), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

 I find particularly persuasive those cases in which the separate enterprise/person requirement has been applied to dismiss RICO counts in the context of securities or commodities fraud schemes. *See, e.g., Kaufman v. Chase Manhattan Bank, N.A.*, 581 F.Supp. 350, 357–58 (S.D.N.Y.1984) (alleged fraud and securities violations in inducement to invest in company); *Yancoski v. E.F. Hutton & Co., Inc.*, 581 F.Supp. 88 (E.D.Pa.1983) (suit against broker and brokerage firm for churning and suitability violations); *Dakis ex rel. Dakis Pension Fund v. Chapman*, 574 F.Supp. 757, 759–60 (N.D.Cal.1983) (churning allegations); *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982) (fraudulent inducement and trading in commodities). In two of these cases, the district courts explicitly rejected the argument that the *respondeat superior* doctrine operated to make the brokerage firms liable despite their identity as the RICO enterprise. *Dakis*, 574 F.Supp. at 759 (citing *Parnes*); *Parnes*, 548 F.Supp. at 24 n. 9 (application of *respondeat superior* would yield "bizarre" result). Similarly, and in the face of the opposite conclusion in *Bernstein v. IDT Corp.*, the Seventh Circuit in *Haroco* rejected the view that *respondeat superior* differentiates civil from criminal RICO cases to make a corporate enterprise under § 1962(c) liable as a defendant in civil cases. *Haroco*, 747 F.2d at 402 n. 20.

Plaintiff correctly points out that civil RICO is a rapidly developing area of law.

Indeed, the Supreme Court has very recently granted *certiorari* in *Haroco* and in a Second Circuit case, *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985), to consider whether RICO requires proof of a distinct "racketeering injury." It is possible that the Court may reach the separate person/enterprise issue decided in *Haroco*. Nevertheless, on the basis of current law, plaintiff has failed to state a RICO claim against FCCB. Accordingly, the motion to dismiss Count IV is allowed.

### IV. *Plaintiff's Motion to Amend*

If she cannot win treble damages through RICO, plaintiff seeks to amend her complaint to add a treble damage claim under Mass.Gen.Laws Ann. ch. 93A. Since the Supreme Judicial Court expanded the scope of Chapter 93A in *Raymer v. Bay State National Bank*, 384 Mass. 310, 424 N.E.2d 515 (1981), district courts in this district have disagreed over whether Chapter 93A covers securities and commodities trading claims. *Compare Pettigrew v. Oppenheimer & Co., Inc.*, 582 F.Supp. 98 (D.Mass.1984) (commodities case cognizable under Chapter 93A), *with Sweeney v. Keystone Provident Life Ins. Co.*, 578 F.Supp. 31 (D.Mass.1983) (securities case not within Chapter 93A). The Supreme Judicial Court now promises to decide the issue definitively in several cases argued recently. *See Cabot Corp. v. Baddour*, 394 Mass. 720, 477 N.E.2d 399 (1985). I will deny plaintiff's motion to amend without prejudice to her right to renew it once this issue is resolved by the Supreme Judicial Court.

### CONCLUSION

Defendant's motion for summary judgment is allowed as to Counts I and IV, the Securities Exchange Act and RICO Act claims, and denied as to Counts II and III, the Commodity Exchange Act claims. Plaintiff's motion to amend her complaint is denied without prejudice.